# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

SUSAN VAUGHAN                                                                    PLAINTIFF

V.                                                          CAUSE NO. 3:14-CV-979-CWR-FKB

ANDERSON REGIONAL MEDICAL                                                        DEFENDANT
CENTER

## ORDER DENYING SUMMARY JUDGMENT

Susan Vaughan has filed an employment discrimination lawsuit against Anderson Regional Medical Center ("ARMC"). Before the Court is ARMC's motion for summary judgment. For the reasons below, the motion is denied.

I.      **Factual and Procedural History**

On February 3, 2014, Matt Edwards, Vice President of Nursing at ARMC, hired Vaughan, a 54-year-old nurse, as a supervisor. She began a 90-day introductory period.

That day, Vaughan signed and completed the "Human Resources Policy Test." The test reviewed the hospital's non-discrimination policy, which provides that "harassment of any kind will not be tolerated in the workplace" and that employees should report any incidents to Human Resources.

During the course of her employment, Vaughan was one of 10 supervisors, all of whom were over the age of 40. Four supervisors were older than Vaughan, and of the five who were younger than her, three were within five years of her age.

Vicki Smith, the head nursing supervisor, oversaw Vaughan's progress. During their first shift together, Vaughan says that Smith made the following age-related comments:

1. Just how old are you?
2. We need someone who isn't as old as you are, you weren't interviewed by us and they couldn't ask you during the interview.

3. Just because you have experience doesn't mean you can do this job. It is pretty physical. Hope you can keep up.
4. I don't know why Matt hired you. You're pretty old to be a part of this team, and we needed someone younger.

Over the next month, Vaughan says, Smith consistently made similar, age-related comments. For example, on her March 19, 2014 shift, Smith and another nurse berated Vaughan for being "kinda old and gray headed."

The next day, Vaughan met with Ryan McMillan, a clinical director who supervised Smith. Vaughan complained to McMillan about Smith's comments. McMillan responded, "You just have to get to know Vicki, but I will talk to her. She probably doesn't mean anything by it."

Vaughan did not work with Smith again. When she was scheduled to work with Smith, Vaughan would swap shifts with another supervisor or call in absent.

On April 9, 2014, Vaughan met with Edwards and Smith for a 60-day evaluation. Edwards gave Vaughan positive feedback on her job performance and reviewed general expectations of nursing supervisors. The parties disagree about what was discussed at this meeting. ARMC alleges that Edwards explained to Vaughan that she should not "stir the pot" or "degrade or bad mouth Administration" because supervisors are an extension of Nursing Administration and they need to set the example for the staff as leaders. ARMC also states that Edwards encouraged Vaughan to be open to guidance from other supervisors and that Vaughan verbalized understanding. At the conclusion of the meeting, ARMC alleges that Vaughan shared a form, a Supervisor's report sheet, used by her previous employer that she thought was beneficial. Edwards said it was duplicative of a form already used at ARMC, but thanked Vaughan for the suggestion and told her it looked like a very good tracking tool.

At the end of Vaughan's introductory period, on April 30, 2014, Edwards terminated her. Sharon Futch, the Director of Human Resources, says that Vaughan was fired because of her

2

"continued refusal to work with other nursing supervisors in a cooperative manner, her persistent attempts to impose her former employer's nursing practices . . . and her inability to accept constructive criticism and suggestions from other nursing supervisors during the training process."

Following her termination, Vaughan filed a charge of discrimination with the Equal Employment Opportunity Commission alleging that ARMC violated her rights under the Age Discrimination in Employment Act ("ADEA"). *See* 29 U.S.C. §§ 621 *et seq*. After the EEOC issued a Right to Sue Letter, Vaughan filed this action on December 19, 2014, and asserted two claims under the ADEA: age discrimination and retaliation. She asked for compensatory damages, punitive damages, liquidated damages, back pay (including interest), reinstatement or front pay in lieu of reinstatement, attorney's fees, and costs.

On ARMC's motion, the Court dismissed Vaughan's claims for compensatory and punitive damages on December 7, 2015. 2015 WL 10663140 (S.D. Miss. Dec. 7, 2015). The Court certified its ruling for interlocutory review and stayed these proceedings. A year later, the Fifth Circuit affirmed this Court's dismissal. *See Vaughan v. Anderson Reg'l Med. Ctr.*, 849 F.3d 588, 594 (5th Cir. 2017).

ARMC now moves for summary judgment on Vaughan's claims of age discrimination and retaliation.

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and the portions of the record that support it. *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783

3

F.3d 527, 536 (5th Cir. 2015). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

When considering a summary judgment motion, the court "must view all facts and evidence in the light most favorable to the non-moving party." *Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013) (citation omitted). But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003) (citation omitted). Moreover, inadmissible hearsay is insufficient to create a material dispute for summary judgment. *Garcia v. Reeves Cty., Tex.*, 32 F.3d 200, 204 (5th Cir. 1994).

### III. Discussion

#### A. Age Discrimination

"Under the ADEA, it is unlawful for an employer 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349-50 (5th Cir. 2005) (quoting 29 U.S.C. § 623(a)(1)). To establish an age discrimination claim, an employee must prove by a preponderance of the evidence that age was the "but for" cause of the employer's adverse decision. *Flanner v. Chase Inv. Serves Corp.*, 600 F. App'x 914, 917 (5th Cir. 2015).

The familiar *McDonnell Douglas* framework applies.[1] The plaintiff must first establish a prima facie case of age discrimination with respect to discharge by showing that "(1) she was

---

[1] The evidence presented by Vaughan may present direct evidence of discrimination. Direct evidence of discrimination is not governed by the *McDonnell Douglas* burden-shifting framework. Both parties have

4

discharged; (2) she was qualified for the position; (3) she was within the protected class at the time of discharge; and (4) she was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of her age." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (citation omitted). Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to proffer a legitimate nondiscriminatory reason for its employment action. *Machinchick*, 398 F.3d at 350. If the defendant meets its burden, the plaintiff must meet her ultimate burden of persuasion "by producing evidence tending to show that the reason offered by the defendant is pretext for discrimination." *Id*.

The parties do not dispute the first three prongs of the prima facie case. Vaughan has provided uncontroverted evidence that she was (1) discharged, (2) qualified for the position, and (3) over 40 years old. As to the final prong, Vaughan argues that she was "otherwise discharged because of her age" based on Smith's age-related comments. ARMC argues that the age-related comments, if true, demonstrate mere 'stray remarks' and as such are insufficient to create an inference of age discrimination.

Stray remarks, "standing alone, are insufficient to defeat summary judgment." *Jackson*, 602 F.3d at 380. However, in a circumstantial case of discrimination, where "discriminatory remarks are just one ingredient in the overall evidentiary mix," the Fifth Circuit has applied a "more flexible" standard. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015). The comments must show discriminatory animus on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker. *Id*. at 475-76; *see also Acker v. Deboer, Inc.*, 429 F.

---

nevertheless argued their case under the *McDonnell Douglas* framework. For these reasons, the Court will analyze this case under the same.

5

Supp. 2d 828, 846 (N.D. Tex. 2000) ("The Fifth Circuit has recognized the inherent value of workplace remarks as circumstantial evidence of discriminatory intent, even though such remarks may be 'stray remarks' that would not ordinarily suffice as direct evidence of employment discrimination.").

Vaughan easily meets this standard. Viewing the evidence in the light most favorable to Vaughan, the record shows that Smith made numerous discriminatory comments, including "we need someone who isn't as old as you are," "you're pretty old," and "we need someone younger."[2] Although Edwards was the ultimate decisionmaker, he assigned Smith to supervise Vaughan and Smith reported Vaughan's work performance directly to Edwards.

ARMC raises the "same actor" defense to bar Vaughan's ability to prove a prima facie case. *Brown v. CSC Logic*, 82 F.3d 651, 658 (5th Cir. 1996). The Fifth Circuit has found that when the same supervisory employee hires and fires a plaintiff within a short period of time, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer. *See id*. A "strong inference" should not be morphed into an automatic finding of no discrimination. In fact, the Fifth Circuit has noted that that same actor inference does not rule out the possibility that an individual could prove a case of discrimination. *Russell v. McKinney Hosp. Venue*, 235 F.3d 219, 228 n.16 (5th Cir. 2000). Courts should "look at the

---

[2] AMRC argues that Vaughan's affidavit is "vague" and "conclusory," and therefore "insufficient to create a genuine issue of material fact." *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013). The Court disagrees. The affidavit details the various comments that Smith made to Vaughan during the course of her employment. While a party's own affidavit is often self-serving, the Fifth Circuit does not exclude such an affidavit as incompetent for that reason by itself. *See C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) ("[A]n affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue even if the affidavit is arguably self-serving.").
ARMC further argues that it defies common sense to impute any age animus to Smith because she is only a few years younger than Vaughan, and therefore would not discriminate on the basis of age. This notion has persuasively been refuted by the EEOC, which observes that "discrimination can occur when the victim and the person who inflicted the discrimination are both over 40." *See Types of Discrimination: Age*, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, https://www.eeoc.gov/laws/types/age.cfm.

evidence as a whole, keeping in mind the ultimate issue: Whether age was a determinative factor in the employment decision." *Haun v. Ideal Ind., Inc.*, 81 F.3d 541, 546 (5th Cir. 1996).

Moreover, ARMC's "same actor inference" may be premature at the summary judgment stage. *See Nwanna v. Ashcroft*, 66 F. App'x 9, 15-16 (7th Cir. 2003); *Williams v. Vitro Serv. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998) ("[I]t is the province of the jury rather than the court … to determine whether the inference generated by "same actor" evidence is strong enough to outweigh a plaintiff's evidence of pretext"); *see also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 645 (7th Cir. 1999) ("[W]e have found no case in this or any other Circuit in which a plaintiff relying on circumstantial evidence to prove an improper motive was able to produce sufficient evidence to otherwise sustain his burden on summary judgment and yet was foreclosed from the possibility of relief by the same-actor inference."); *Antonio v. Sygma Network, Inc*. 458 F.3d 1177, 1183 (10th Cir. 2006) (stating that despite the "same actor" inference, "[t]he plaintiff still has the opportunity to present countervailing evidence of pretext").

Finally, the "same actor" inference is immaterial in this case. The Court does not find it necessary to engage in this analysis given the fact that Vaughan has put forth a cat's paw theory of liability, rather than alleging direct discriminatory animus by the decisionmaker.

To hold the ultimate decisionmaker, in this case Edwards, responsible for the discriminatory statements made by Smith—that is, to invoke a cat's paw analysis—Vaughan must submit evidence sufficient to establish two conditions. First, she must show "a co-worker exhibited discriminatory [age] animus." *Roberson v. Alltel Info. Services*, 373 F.3d 647, 653 (5th Cir. 2004) (citation omitted). Second, she must show "that the same co-worker possessed leverage, or extended influence, over the titular decisionmaker*." Id.* Vaughan alleges that Smith,

her supervisor, made ageist remarks toward her and that this discriminatory animus influenced Edwards' decision to terminate her.

Viewing the evidence in the light most favorable to Vaughan, the ageist remarks made by Smith are appropriate circumstantial evidence of age discrimination. The remarks indicate age-related prejudice on the part of Smith, Vaughan's supervisor, who arguably may have had considerable influence over Edwards, the ultimate decisionmaker.

ARMC proffers three legitimate non-discriminatory reasons for firing Vaughan: (1) Vaughan's refusal to work cooperatively with other nursing supervisors, (2) her persistent attempts to impose her former employer's nursing practices, and (3) her inability to accept constructive criticism and suggestions from other supervisors. Vaughan concedes and the Court agrees that ARMC's reasons meet its burden of production.

A plaintiff may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Jackson*, 602 F.3d at 379 (citations omitted). Vaughan specifically refutes all of ARMC's proffered reasons for her termination. She also re-alleges the age-related comments made by Smith and the proximity of those comments to her termination. ARMC states that it is insufficient for Vaughan to merely make the same arguments to prove both a prima facie case and pretext.

The Fifth Circuit has explained that "once the employer satisfies [its burden of production], the presumption of age discrimination established by the employee's prima facie case dissolves." *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 957 (5th Cir. 1993) (citation omitted). Once the employer has met this burden, the plaintiff's burden of persuasion then arises and she must prove that the proffered reasons are not just pretext but pretexts for age discrimination. *Id*. The Court disagrees with the manner in which ARMC applies *Bodenheimer* to this case.

Vaughan is not prohibited from tendering the same factual evidence used to support her prima facie case to also satisfy her burden to show pretext. The Court may still consider the evidence establishing Vaughan's prima facie case and "inferences properly drawn therefrom … on the issue of whether [ARMC's] explanation is pretextual." *Reeves v Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (citation omitted).

While organized somewhat curiously, Vaughan offers evidence to prove that the proffered reasons by ARMC for her termination are pretext for age discrimination. Vaughan argues that ARMC's first reason, that Vaughan refused to work cooperatively with other supervisors, is not true. Edwards met with Vaughan only three times during the course of her employment: (1) when she was hired on February 3, 2014, (2) during her 60-day evaluation meeting on April 9, 2014, and (3) when she was terminated on April 30, 2014. Edward's conclusion that Vaughan did not work well with other supervisors could only reasonably be supported by reports from Smith. During the 60-day evaluation meeting, only Smith was present as her unofficial supervisor, despite not having worked with her for the past three weeks. Vaughan has put forth evidence of unpleasant interactions with Smith and another supervisor due to negative comments concerning her age. Moreover, Vaughan's evaluation report upon termination display only "good" and "fair" scores under each category, including "attitude toward supervisor." Docket. No. 53, Exhibit C-1.

Vaughan argues ARMC's second reason for her termination, her persistent attempts to impose her former employer's nursing practices, is not worthy of credence. She testifies that the only time she ever provided procedures from a prior employer was if a nurse or manager specifically asked her how her prior employer handled an issue. ARMC only alleges two instances that Vaughan mentioned her former employer's practices. The first time was early in

9

her employment when Vaughan requested to McMillan that ARMC consider changing certain nursing practices to adopt those followed by her former employer. Docket No. 4. The second time was during the April 9, 2014 meeting when she presented a Supervisor's report sheet used at her former employment that she thought would be beneficial for ARMC. Docket No. 53, Exhibit C-2. Vaughan denies showing a form during this meeting. At any rate, the allegations presented by AMRC regarding Vaughan's remarks about her former employer's practices and policies hardly demonstrate "persistent" attempts or an "imposing" nature.

Vaughan also argues that ARMC's third legitimate, nondiscriminatory reason, her inability to accept constructive criticism and suggestions, is untrue and not worthy of credence. ARMC alleges that during the April 9, 2014 evaluation meeting, Edwards encouraged her to be open to guidance from other supervisors and Vaughan verbalized understanding. Docket No. 53, Exhibit C-1. Her evaluation upon termination report display "good" scores under the categories of "Quality of Work", "Initiative," and "Dependability."

A reasonable jury could conclude that Smith's age-related comments, Smith's absence from working with Vaughan after she complained to Smith's clinical director, Smith's apparent authority over Vaughan's termination, and Vaughan's evaluation report upon termination that display only "good" and "fair" scores under each category, tends to show that ARMC's proffered reasons for Vaughan's termination are pretext for age discrimination.

As a result, this motion as to the age discrimination claim is denied.

**B.     Age Retaliation**

Vaughan next claims that she was unlawfully retaliated against after complaining of discriminatory conduct.

Retaliation claims under the ADEA utilize the same burden-shifting analysis. To establish a prima facie retaliation claim under the ADEA, a plaintiff must show that (1) she engaged in protected activity, (2) that an adverse employment action occurred, and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision. *Holtzclaw v. DSC Communications Corp*, 255 F.3d 254, 259 (5th Cir. 2001). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). If the defendant advances a legitimate, nondiscriminatory reason, then the plaintiff must provide evidence that would permit a reasonable trier of fact to find that the proffered reason is pretext for retaliation. *Id.*

An employee has engaged in protected activity if he has "(1) *opposed* any practice made unlawful by the ADEA (the "opposition clause"); or (2) made a charge, testified, assisted or *participated* in any way in an investigation, proceeding or hearing made available the ADEA (the "participation clause")." *Fife v. Vicksburg Healthcare, LLC*, 945 F. Supp. 2d 721, 740 (S.D. Miss. 2013) (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-28 (5th Cir. 2000)).[3] The opposition clause requires Vaughan to show she had a "reasonable belief that the employer was engaged in unlawful employment practices." *Id*.

Vaughan engaged in a protected activity when she reported Smith's age-related comments to McMillan.

Retaliation cannot be shown without first establishing that the employer had knowledge of the employee's prior protected activity. Absent knowledge, there can be no retaliatory intent,

---

[3] The participation clause is irrelevant in this case because Vaughan did not file her EEOC charge until after her termination and she does not claim that she participated in a co-worker's investigation or proceeding regarding protected matters.

11

and therefore no causal connection. *See e.g., Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003). An employer, however, can also display knowledge under a "cat's paw" theory where an individual, due to retaliatory animus, influenced a decisionmaker who did not know of the protected conduct or animus. *Staub v. Proctor Hosp.*, 562 U.S. 411, 418-22 (2011); *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (holding that a plaintiff may use a cat's paw theory when they "cannot show that the decisionmaker—the person who took the adverse employment action—harbored any retaliatory animus."). Under this theory, Vaughan must show that the person with a retaliatory animus, in this case Smith, influenced the decisionmaker, Edwards, to terminate her.

ARMC argues that Vaughan has no proof of engaging in any protected activity because ARMC has no record of any complaints of age discrimination made by Vaughan, and Vaughan's testimony alone is insufficient. The Director of Human Resources, Sharon Futch, states under oath that ARMC has no record or evidence demonstrating any complaints made by Vaughan about age discrimination prior to being terminated. Vaughan argues that Edwards' notes regarding the April 9, 2014 meeting—wherein he asserts that he told Vaughan that she should not "stir the pot" or "degrade or bad mouth Administration"—could reasonably be interpreted as proof of Edwards' knowledge of Vaughan's complaints. Docket No. 57. Oddly enough, Vaughan denies that these statements were ever made at the April 9, 2014 meeting. ARMC does not provide an explanation for what, if anything, was being referenced by those statements.

Vaughan further contends that Smith's assertion that Vaughan had poor performance is not worthy of credence. Smith had not worked with her for over a month. Vaughan says that this is circumstantial evidence that Smith knew of Vaughan's complaint to McMillan.

The causal link between the adverse action and the protected activity may be established by evidence that the adverse action occurred shortly after the plaintiff engaged in protected activity. Suspicious timing, either alone or in combination with other facts, may support an inference that a materially adverse employment action was retaliatory. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 405 n.4 (5th Cir. 1999); *Swanson v. Gen. Services Admin.*, 110 F.3d 1180, 188 (5th Cir. 1997). ARMC does not specifically deny that Smith never worked with Vaughan again after March 20. Vaughan was terminated approximately six weeks after she reported Smith's age-related comments to McMillan On March 20. These factual disputes tend to show that ARMC's legitimate, nondiscriminatory reasons are false or not worthy of credence.

ARMC offers the same nondiscriminatory reasons to explain Vaughan's termination as it did for the age discrimination claim. ARMC does not offer a legitimate, nondiscriminatory reason that explains the timing, nor do they provide any additional evidence that supports Edwards' belief that Vaughan did not work well with other supervisors, other than reports from Smith. The Court finds that the evidence on the record, when viewed in its totality and in the light most favorable to Vaughan, is sufficient to create a genuine issue of material fact as to whether ARMC terminated Vaughan in retaliation for activities protected by the ADEA.

As a result, the motion as to the retaliation claim is denied.

IV. **Conclusion**

Having denied the motion for summary judgment, within 10 days, the parties shall contact the chambers of the Magistrate Judge to reschedule the settlement conference.

**SO ORDERED**, this the 4th day of October, 2018.

/s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE